**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **JOSHUA OSHAUGHNESSY and MELISSA MURILLO, on behalf of themselves and all others similarly situated,**<br><br>**Plaintiffs,**<br><br>　　**-against-**<br><br>**GREGORYS COFFEE MANAGEMENT LLC,**<br><br>**Defendant.** | **No. 1:21-cv-4350-RER** |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR**
**UNOPPOSED MOTION FOR FINAL APPROVAL OF THE**
**CLASS ACTION SETTLEMENT AGREEMENT**

**TABLE OF CONTENTS**

I.      INTRODUCTION .................................................................................................... 1

II.     FACTUAL AND PROCEDURAL BACKGROUND OF THE LITIGATION ................. 1

III.    THE COURT'S PRELIMINARY APPROVAL ORDER AND SETTLEMENT
        ADMINISTRATION ................................................................................................ 2

        A.     The Settlement Class ..................................................................................... 2

        B.     Administration of the Settlement Notice ...................................................... 3

        C.     Objections and Exclusions ............................................................................ 4

        D.     Settlement Payments ..................................................................................... 4

        E.     Releases ......................................................................................................... 5

IV.     THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT ......... 6

        A.     The Court Concluded the Requirements of Rule 23(a) and Rule 23(b)(3) Are
               Met for the Class and, Accordingly, Certified it for Settlement Purposes ............. 6

        B.     The Judicially-Approved Notice Program was Successful .................................... 7

        C.     The Settlement is Procedurally and Substantively Fair, Reasonable, and
               Adequate ....................................................................................................... 7

               1.     The Settlement is Procedurally Fair ............................................................ 8

               2.     The Settlement is Substantively Fair .......................................................... 9

                      a.     The Recovery is Reasonable in Light of the Risks of Going
                             Forward with Litigation (*Grinnell* Factors 1, 4, 5, 8, 9 and Rule
                             23(e)(2)(C)(i)) ............................................................................... 9

                      b.     The Reaction of the Class Has Been Positive (*Grinnell* Factor
                             2) ................................................................................................ 11

                      c.     Discovery Advanced Far Enough for the Parties to
                             Responsibly Resolve the Case (*Grinnell* Factor 3) ...................... 12

                      d.     Maintaining the Class Through Trial Presents Risk (*Grinnell*
                             Factor 6) ...................................................................................... 13

                      e.     Defendant's Ability to Withstand a Greater Judgment Is Not
                             Determinative (*Grinnell* Factor 7) ............................................. 13

        D.     The Allocation and Distribution Features of the Settlement Satisfy Rule 23 ....... 14

| | 1. | The Distribution Plan Was Reasonably Calculated to Reach the Class Members (Rule 23(e)(2)(C)(ii)) | 14 |
| | 2. | The Requested Attorneys' Fees are Reasonable (Rule 23(e)(2)(C)(iii)) | 14 |
| | 3. | The Parties' Have No Other Agreement Directly Related to this Settlement (Rule 23(e)(2)(C)(iv)) | 15 |
| | 4. | The Proposed Settlement Treats Class Members Equitably Relative to Each Other (Rule 23(e)(2)(D)) | 15 |
| V. | | NAMED PLAINTIFFS' REQUESTED SERVICE AWARD PAYMENTS ARE REASONABLE | 16 |
| VI. | | ATTORNEYS' FEES AND COSTS ARE REASONABLE, APPROPRIATE, AND SHOULD BE APPROVED | 17 |
| | A. | Class Counsel's Fee Request is Reasonable Under a Lodestar Cross Check | 18 |
| | B. | Class Counsel's Request is, Additionally, Reasonable Under the *Goldberger* Factors | 19 |
| | 1. | Class Counsel Expended Substantial Time and Labor | 19 |
| | 2. | The Magnitude and Complexities of the Litigation | 20 |
| | 3. | The Risk of the Litigation | 21 |
| | 4. | The Quality of Representation | 21 |
| | 5. | The Requested Fee in Relation to the Settlement | 22 |
| | 6. | Public Policy Considerations | 22 |
| | C. | Class Counsel's Request for One-Third of the Settlement in Fees is Appropriate in an Employee Class Action | 23 |
| VII. | | CLASS COUNSEL'S REQUESTED EXPENSES ARE REASONABLE | 24 |
| VIII. | | CONCLUSION | 24 |

# TABLE OF AUTHORITIES

**Cases**                                                                                       **Page(s)**

*In re Adelphia Commc'ns Corp. Sec. Litig.*,
   271 Fed. App'x 41 (2d Cir. 2008) .......................................................... 11

*In re Austrian & German Bank Holocaust Litig.*,
   80 F. Supp. 2d 164 (S.D.N.Y. 2000) ...................................................... 10

*Azogue v. 16 for 8 Hospitality LLC*,
   No. 13 Civ. 7899, 2016 WL 441422 (S.D.N.Y. Aug. 19, 2016)........................... 23

*Baudin v. Res. Mktg. Corp., LLC*,
   No. 19 Civ. 386, 2020 WL 4732083 (N.D.N.Y. Aug. 13, 2020) ........................... 16

*Baudin v. Res. Mktg. Corp., LLC*,
   No. 19 Civ. 386, 2020 WL 6131758 (N.D.N.Y. Oct. 19, 2020) ........................... 16

*Beckman v. KeyBank, N.A.*,
   293 F.R.D. 467 (S.D.N.Y. 2013)................................................... 20, 22, 24

*Berrios v. Nicholas Zito Racing Stable, Inc.*,
   No. 04 Civ. 22, 2014 WL 12838562 (E.D.N.Y. Jan. 28, 2014)............................. 18

*Calle v. Elite Specialty Coatings Plus, Inc.*,
   No. 13 Civ. 6126, 2014 WL 6621081 (E.D.N.Y. Nov. 21, 2014) .......................... 15

*Cano v. Nineteen Twenty Four, Inc.*,
   No. 15 Civ. 4082, 2017 WL 11507654 (E.D.N.Y. Apr. 24, 2017) ......................... 15

*Castillo v. Cranes Express Inc.*,
   No. 18 Civ. 1271, 2018 WL 7681356 (E.D.N.Y. Dec. 12, 2018)........................... 23

*Chavarriaf v. N.Y. Airport Serv., LLC*,
   875 F. Supp. 2d 164 (E.D.N.Y. 2012)...................................................... 11

*Christine Asia Co. v. Yun Ma*,
   No. 15-MD-2631, 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) .......................... 15

*In re Citigroup Inc. Sec. Litig.*,
   965 F. Supp. 2d 369 (S.D.N.Y. 2013)...................................................... 11

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974)............................................................. 8, 9

*Cohan v. Columbia Sussex Mgmt., LLC*,
   No. 12 Civ. 3203, 2018 WL 4861391 (E.D.N.Y. Sept. 28, 2018) ................. 17, 18, 23

*Cruz v. Sal-Mark Rest. Corp.*,
   No. 17 Civ. 815, 2019 WL 355334 (N.D.N.Y. Jan. 28, 2019) ............................ 13

*Cymbalista v. JPMorgan Chase Bank, N.A.*,
   No. 20 Civ. 456, 2021 WL 7906584 (E.D.N.Y. May 25, 2021)............................................ 14

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001) ................................................................................................. 8

*Davis v. J.P. Morgan Chase & Co.*,
   827 F. Supp. 2d 172 (W.D.N.Y. 2011) ................................................................................ 19

*Dupler v. Costco Wholesale Corp.*,
   705 F. Supp. 2d 231 (E.D.N.Y. 2010)................................................................................. 11

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) .............................................................................................................. 7

*Fleisher v. Phoenix Life Ins. Co.*,
   No. 11 Civ. 8405, 2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015) ........................................ 19

*Flores v. Anjost Corp.*,
   No. 11 Civ. 1531, 2014 WL 321831 (S.D.N.Y. Jan. 29, 2014) ............................................ 22

*Flores v. CGI Inc.*,
   No. 22 Civ. 350, 2022 WL 13804077 (S.D.N.Y. Oct. 21, 2022).......................................... 12

*Flores v. Mamma Lombardi's of Holbrook, Inc.*,
   104 F. Supp. 3d 290 (E.D.N.Y. 2015).................................................................................. 23

*Frank v. Eastman Kodak Co.*,
   228 F.R.D. 174 (W.D.N.Y. 2005) ................................................................................. 16, 17

*Goldberger v. Integrated Res., Inc.*,
   209 F.3d 43 (2d Cir. 2000)........................................................................................ 17, 19, 22

*Hall v. ProSource Techs., LLC*,
   No. 14 Civ. 2502, 2016 WL 1555128 (E.D.N.Y. Apr. 11, 2016)..................................... 22, 23

*Health and Welfare Fund v. Merck–Medco Managed Care, L.L.C.*,
   504 F.3d 229 (2d Cir.2007)................................................................................................... 8

*Hernandez v. Immortal Rise, Inc.*,
   306 F.R.D. 91 (E.D.N.Y. 2015) ...................................................................... 8, 12, 13, 18

*Hyun v. Ippudo USA Holdings*,
   No. 14 Civ. 8706, 2016 WL 1222347 (S.D.N.Y. Mar. 24, 2016)........................................ 17

*Johnson v. Brennan*,
   No. 10 Civ. 4712, 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) ........................................ 10

*Lora v. To-Rise LLC*,
   No. 16 Civ. 3604, 2020 WL 8921400 (E.D.N.Y. June 3, 2020).......................................... 9

*Maley v. Del Glob. Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002)............................................................ 19

*Masters v. Wilhelmina Model Agency, Inc.*,
   473 F.3d 423 (2d Cir. 2007)....................................................................... 24

*McReynolds v. Richards-Cantave*,
   588 F.3d 790 (2d Cir. 2009)......................................................................... 8

*Mendez v. MCSS Rest. Corp.*,
   No. 16 Civ. 2746, 2022 WL 3704591 (E.D.N.Y. Aug. 26, 2022) ...................... 8, 15

*Meo v. Lane Bryant, Inc.*,
   No. 18 Civ. 6360, 2020 WL 4047897 (E.D.N.Y. July 17, 2020)...................... 18, 23

*Mikhlin v. Oasmia Pharm. AB*,
   No. 19 Civ. 4349, 2021 WL 1259559 (E.D.N.Y. Jan. 6, 2021).............................. 14

*Milton v. Bells Nurses Registry & Employment Agency, Inc.*,
   No. 502303/2015, 2015 WL 9271692 (N.Y. Sup. Dec. 21, 2015)........................... 24

*Monaco v. Historic Old Bermuda Inn, Inc.*,
   No. 18 Civ. 4101, 2020 WL 13571784 (E.D.N.Y. Apr. 3, 2020) ........................ 8, 9

*Morris v. Affinity Health Plan, Inc.*,
   859 F. Supp. 2d 611 (S.D.N.Y. 2012) ................................................... 13, 19

*Moukengeschaie v. Eltman, Eltman & Cooper, P.C.*,
   No. 14 Civ. 7539, 2020 WL 5995650 (E.D.N.Y. Oct. 8, 2020) ............................ 12

*Moukengeshcaie v. Eltman, Eltman & Cooper, P.C.*,
   No. 14 Civ. 7539, 2020 WL 5995978 (E.D.N.Y. Apr. 21, 2020) ......................... 12

*Mouloki v. Epee*,
   No. 14 Civ. 5532, 2017 WL 2791215 (N.D. Ill. June 27, 2017)........................... 21

*Osman v. Grube, Inc.*,
   No. 16 Civ.00802, 2018 WL 2095172 (N.D. Ohio May 4, 2018) .......................... 21

*Parker v. City of New York*,
   No. 15 Civ. 6733, 2018 WL 6338775 (E.D.N.Y. Dec. 4, 2018)............................ 13

*Parker v. Jekyll & Hyde Ent. Holdings, L.L.C.*,
   No. 08 Civ. 7670, 2010 WL 532960 (S.D.N.Y. Feb. 9, 2010) ........................ 16, 17

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   330 F.R.D. 11 (E.D.N.Y. 2019) ............................................................ 14

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
   164 F.R.D. 362 (S.D.N.Y. 1996)............................................................ 12

*Pulliam v. Trans Express, Inc.*,
 No. 19 Civ. 4038, 2021 WL 4780136 (E.D.N.Y. Sept. 1, 2021) ............................................ 17

*Sanchez v. Roka Akor Chicago LLC*,
 No. 14 Civ. 4645, 2017 WL 1425837 (N.D. Ill. Apr. 20, 2017)............................................ 21

*Stinson v. City of New York*,
 256 F. Supp. 3d 283 (S.D.N.Y. 2017) .................................................................................... 12

*Sukhnandan v. Royal Health Care of Long Island LLC*,
 No. 12 Civ. 4216, 2014 WL 3778173 (S.D.N.Y. July 31, 2014)............................................ 22

*Tanski v. AvalonBay Communities, Inc.*,
 No. 15 Civ. 6260, 2020 WL 2733989 (E.D.N.Y. May 26, 2020)........................................... 19

*In re Vitamin C Antitrust Litig.*,
 No. 06-MD-1738, 2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012) ........................................... 16

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
 396 F.3d 96 (2d Cir. 2005) ........................................................................................... 8, 9, 12

*Weston v. TechSol, LLC*,
 No. 17 Civ. 0141, 2018 WL 4693527 (E.D.N.Y. Sept. 26, 2018) .......................................... 18

**Regulations**

N.Y.C. Admin. Code § 20-1201 ...................................................................................................... 10

N.Y.C. Admin. Code § 20-1208 ...................................................................................................... 10

N.Y.C. Admin. Code § 20-1211 ...................................................................................................... 10

**Rules**

Fed. R. Civ. P. 23 ............................................................................................................................ 14

Fed. R. Civ. P. 23(c) ......................................................................................................................... 7

Fed. R. Civ. P. 23(e) ...................................................................................................................... 6, 9

**Other Authorities**

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, § 13.1. (5th ed. 2020)............... 6

## I.       INTRODUCTION

Plaintiffs Joshua Oshaughnessy and Melissa Murillo ("Named Plaintiffs"), on behalf of themselves and the Settlement Class Members (collectively, "Plaintiffs"), submit this memorandum of law in support of their Motion for Final Approval of the Class Action Settlement Agreement they reached with Gregorys Coffee Management LLC ("Defendant"). Because the proposed settlement satisfies the approval criteria, Plaintiffs respectfully request that the Court: (1) approve the settlement set forth in the Agreement, ECF No. 26-2; (2) approve the Service Awards to Named Plaintiffs; and (3) approve the attorneys' fees and costs. A Proposed Order is attached as Exhibit A to the Declaration of Michael M. Tresnowski ("Tresnowski Decl.").[1] Defendant does not oppose this motion.

## II.      FACTUAL AND PROCEDURAL BACKGROUND OF THE LITIGATION

This is a Rule 23 class action brought pursuant to New York City Fair Workweek Law, Title 20, Chapter 12 of the New York City Administrative Code ("Fair Workweek Law"), arising from Plaintiffs' allegations that Defendant violated the Fair Workweek Law by failing to: (1) provide all employees with a good faith estimate of the hours, dates, times, and locations of employees' expected regular work schedule; (2) provide predictable schedules with at least 14-days' notice (Plaintiffs allege that Defendant changed employees' schedules at the last minute and required employees to work closing and opening shifts without at least 11 hours off in between); and (3) provide the legally required information regarding new shifts to current employees before hiring new employees.[2]

---

[1]      All capitalized terms are defined in the Settlement Agreement and all exhibits are attached to the Declaration of Michael M. Tresnowski.

[2]      Named Plaintiffs also asserted claims under the FLSA and NYLL. Those claims were resolved on an individual basis pursuant to the individual settlement, which was approved by the Court on November 2, 2022.

Named Plaintiffs Joshua Oshaughnessy and Melissa Murillo filed this suit on August 3, 2021. ECF No. 1. Defendant answered the Complaint on September 2, 2021. ECF No. 8. The Court then ordered that the Parties attend mediation. ECF No. 10. The Parties jointly agreed to attend mediation before Mr. Stephen P. Sonnenberg and scheduled the mediation for January 18, 2022. ECF No. 14.

In advance of the Parties' mediation session, Defendant provided scheduling, compensation and time data for three stores where Plaintiffs primarily worked and from the time period of January 1, 2019 through March 16, 2021. Tresnowski Decl. ¶ 12. Class Counsel used this scheduling, time and compensation data to build a comprehensive damages model. *Id*. The Parties exchanged mediation statements in advance of the mediation. *Id*.

The January 18, 2022 mediation was unsuccessful, but the Parties agreed to attend a second mediation on March 23, 2022 with Mr. Sonnenberg. Tresnowski Decl. ¶ 13. While the case did not resolve at the second mediation, the Parties continued to discuss resolution and agreed to the terms of a settlement on August 22, 2022. *Id*. ¶ 14. The Parties entered into the final Settlement Agreement on October 31, 2022. *Id*. ¶ 15.

On October 31, 2022, Plaintiffs filed their Motion for Preliminary Approval, which the Court granted on November 2, 2022. ECF Nos. 26 & 28.

## III.   THE COURT'S PRELIMINARY APPROVAL ORDER AND SETTLEMENT ADMINISTRATION

### A.   The Settlement Class

In its Preliminary Approval Order, the Court preliminarily approved the Settlement Agreement, characterizing the "Settlement set forth therein as being fair, adequate, and reasonable, and not a product of collusion." ECF No. 28. The Court also certified the following class, for settlement purposes only, under the Fair Workweek Law and Fed. R. Civ. P. 23:

> All the approximately 200 hourly employees including the Named Plaintiffs, who worked at one or more of Defendant's stores located at 42 Broadway (Store GC-7), 100 Wall Street (Store GC-8), and 16 Court Street (Store GC-17) during the time period of August 3, 2019 through March 31, 2022.

ECF No. 28 ¶ 2; ECF No. 26-2, § 1.v. No member of the proposed settlement class has submitted a request for exclusion. Ex. C to Tresnowski Decl. (Analytics Aff.) ¶ 10.

### B.     Administration of the Settlement Notice

On November 16, 2022, the Court granted the Parties' joint motion, at ECF No. 29, to extend the deadline to issue Settlement Notices to November 23, 2023. *See* the Court's November 16, 2022 Text Order. On November 21, 2022, Counsel for Defendant provided the Settlement Administrator with a mailing list ("Class List") containing names, addresses, settlement award amounts, Employee ID numbers, email addresses, and phone numbers for 218 Settlement Class Member records. Ex. C to Tresnowski Decl. (Analytics Aff.) ¶ 5. On November 23, 2022, in accordance with the Settlement Agreement, the Court's preliminary approval order, and the updated notice deadline, the Settlement Administrator mailed and emailed the approved Settlement Notice to Settlement Class Members. *Id.* ¶ 8. The Settlement Notice summarized the essential terms of the Settlement Agreement and identified the Gross Settlement Amount. *Id.* ¶ 4. The Settlement Notice also provided an estimate of how much Settlement Class Members can expect to receive, how settlement payments will be calculated, and how recipients can receive more information about the settlement. *Id.* ¶¶ 4, 8. The Settlement Notice advised Settlement Class Members of applicable deadlines and the final approval hearing. *Id.* ¶ 4. It also informed Settlement Class Members of Named Plaintiffs' request for Service Awards and Class Counsel's intention to seek one-third of the Gross Settlement Amount for attorneys' fees and litigation costs. *Id.* During the notice period, the Settlement Administrator initially sent the Settlement Notice to the most current mailing addresses of 217 Settlement Class Members via USPS First Class Mail

and sent the Settlement Notice to 246 email addresses (because some Settlement Class Members had multiple email addresses)—of which 237 emails were successfully delivered. *Id.* ¶ 8. If a Settlement Notice was returned by the USPS as undeliverable and without a forwarding address, the Settlement Administrator performed an advanced address search on these addresses by using Experian, a reputable research tool. *Id.* ¶ 9. The Settlement Administrator used the name and previous address to locate a current address. *Id.* In total, 31 Settlement Notices were returned to the Settlement Administrator as undeliverable by USPS. *Id.* From its address research, Analytics located 24 updated addresses and Settlement Notices were mailed to the updated addresses. *Id.* In addition, the Settlement Administrator promptly mailed the Settlement Notice to updated addresses provided by USPS and Settlement Class Members. *Id.* In total, 210 Class Members received a Settlement Notice by mail, and all Settlement Class Members, for whom Analytics received an undeliverable Settlement Notice, received the Settlement Notice by email. Between email and paper mail, 216 Settlement Class Members (99.08%) received notice. *Id.*

### C.     Objections and Exclusions

No Settlement Class Members have submitted objections or requested to be excluded from the settlement within the period of time provided for in the Settlement Notice. *Id.* ¶¶ 10, 11.

### D.     Settlement Payments

The Settlement provides for the following payments to be made from the Gross Settlement Amount of $200,000 after final approval: (i) the Named Plaintiffs and Settlement Class Members' *pro rata* settlement awards; (ii) the Named Plaintiffs' Service Awards; and (iii) Class Counsel's attorneys' fees and litigation expenses. ECF No. 26-2, § 3(a)(i).

The settlement payments will be made pursuant to the formula described at § 3(d)(i) of the Settlement Agreement, which awards each Settlement Class Member an amount determined on a *pro rata* basis, based upon the number of weeks in the Class Period the Settlement Class Member

worked. *Id*., § 3(d)(i). The distribution has a reasonable and rational basis to the damages each Settlement Class Member could pursue individually for the scheduling practices by Defendant that Plaintiffs assert failed to comply with the Fair Workweek Law.

The Settlement Agreement includes a Service Award in the amount of $3,000, each, to Named Plaintiffs Joshua Oshaughnessy and Melissa Murillo. *Id*., § 3(c)(i). These awards are in addition to the payments each individual will receive as their *pro rata* share of the Net Settlement Amount. The Settlement Notice advised Class Members about the request for Service Awards. Ex. C to Tresnowski Decl. (Analytics Aff.) ¶ 4.

The Settlement Agreement also provides for the award of attorneys' fees and costs. Under the Agreement, the total fees sought shall not exceed $66,666.67, and litigation costs and expenses sought will not exceed $12,000. ECF No. 26-2, § 3(b)(i). The Settlement Notice also advised Class Members about the request for Class Counsel's fees and costs. Ex. C to Tresnowski Decl. (Analytics Aff.) ¶ 4. Consistent with the Settlement Agreement terms, Class Counsel seeks $66,666.67 in fees—a significant discount, based upon the hours actually committed to settling this litigation.[3]

The cost of administering the Settlement will be paid by Defendant, in addition to and separate from the Gross Settlement Amount. ECF No. 26-2, § 2(b)(iii).

### E.    Releases

Settlement Class Members will only release Defendant and the Released Parties from all claims, damages and causes of action under New York City Fair Workweek Law from August 3, 2019 through March 31, 2022. *Id.*, § 5(a). Named Plaintiffs will provide a broader release but will receive Service Awards in addition to their settlement payments. ECF No. 26-2, §§ 3(c), 5(b).

---

[3]    Tresnowski Decl. ¶ 19.

## IV.   THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT

Under Rule 23(e), settlement of a class action involves three distinct steps: 1) preliminary approval of the proposed settlement, on written motion; 2) dissemination of notice of settlement to all affected class members; and 3) final approval of the settlement, following a written motion and fairness hearing. *See* Fed. R. Civ. P. 23(e). Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, § 13.1. (5th ed. 2020).

The first two steps have already been completed. *See* ECF No. 28; Ex. C to Tresnowski Decl. (Analytics Aff.) ¶¶ 8, 9. Plaintiffs now request that the Court complete the final step— granting final approval of the Settlement Agreement; approving the Service Awards, Class Counsel's fees and costs, and Settlement Administrator costs; and authorizing the Administrator to disburse Settlement Class Members' Settlement Checks in accordance with the schedule detailed in § 4 of the Settlement Agreement.

### A.   The Court Concluded the Requirements of Rule 23(a) and Rule 23(b)(3) Are Met for the Class and, Accordingly, Certified it for Settlement Purposes.

In the Preliminary Approval Order, the Court certifies the proposed class, for settlement purposes, under the Fair Workweek Law and Fed. R. Civ. P. 23. Specifically, the court determined that the proposed Settlement Class satisfied the four requirements of Rule 23(a), finding that:

> (i) the class is so numerous that joinder is impracticable;
> (ii) common questions of fact and law exist;
> (iii) the Class Representatives' claims are typical of the class members' claims; and
> (iv) the Class Representatives will be able to fairly and adequately protect the interests of the class.

ECF No. 28 at 2.

The Court additionally found that, for settlement purposes, the proposed Settlement Class satisfied the Rule 23(b)(3) requirement that questions of law or fact common to the class predominate over questions affecting individual members, and the class action is superior to other

available methods of adjudication. *See id.* None of the pertinent facts presented to the Court on preliminary approval have changed, and no Settlement Class Members have objected to the settlement. The Settlement Class should, accordingly, be certified for purposes of final approval.

**B.    The Judicially-Approved Notice Program was Successful.**

Rule 23(c)(2)(B) requires the Court to direct to class members the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23 (c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). As the Supreme Court held, notice by mail provides such "individual notice to all members" in accordance with Rule 23(c)(2)(B). *Id*. Where the names and addresses of class members are easily ascertainable, individual notice through the mail is "clearly the 'best notice practicable.'" *Id*. at 175. In the Court's Preliminary Approval Order, it concluded the Parties' proposed notice "(1) meets the requirements of federal law and due process; (2) is the best notice practicable under the circumstances; and (3) shall constitute due and sufficient notice to all individuals entitled thereto." ECF No. 28 at 3. The proposed and issued notice meets the seven specific elements enumerated in Rule 23(c)(2)(B).

The procedure used to issue notice was successful. Between Settlement Notices sent via USPS First Class Mail and Settlement Notices sent via email, 216 Settlement Class Members (99.08%) received notice. *See* Ex. C to Tresnowski Decl. (Analytics Aff.) ¶ 9. The Parties' and the Settlement Administrator's extensive efforts to effectuate notice to the class, as described above, meet the requirements of Rule 23(c)(2)(B).

**C.    The Settlement is Procedurally and Substantively Fair, Reasonable, and Adequate.**

Final approval of a class action settlement under Rule 23 is governed by Rule 23(e)(2), which requires that the court hold a hearing and find after the hearing whether the settlement is

procedurally and substantively fair, reasonable and adequate. *See Health and Welfare Fund v. Merck–Medco Managed Care, L.L.C.*, 504 F.3d 229, 247 (2d Cir.2007). Courts assess procedural fairness by examining the negotiating process leading to the settlement. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001); *accord Hernandez v. Immortal Rise, Inc.*, 306 F.R.D. 91, 99 (E.D.N.Y. 2015) (collecting cases). Courts assess substantive fairness in the Second Circuit with reference to the "factors set forth in Rule 23 and in *City of Detroit v. Grinnell Corp*., 495 F.2d 448 (2d Cir. 1974) (the 'Grinnell factors')." *Monaco v. Historic Old Bermuda Inn, Inc*., No. 18 Civ. 4101, 2020 WL 13571784, at *2 (E.D.N.Y. Apr. 3, 2020).

### 1. The Settlement is Procedurally Fair.

As the Second Circuit has noted, there is "a presumption of fairness, reasonableness, and adequacy as to [a] settlement where 'a class settlement [is] reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" *McReynolds v. Richards-Cantave,* 588 F.3d 790, 803 (2d Cir. 2009) (quoting *Wal–Mart Stores, Inc*., 396 F.3d at 116). Here, all Parties are represented by experienced, capable counsel. Settlement was only reached after the scheduling, time, and pay data for the individuals in the settlement class was produced by Defendant then analyzed by Class Counsel and used to build a comprehensive damage model, and after the Parties engaged in two mediations with experienced mediator, Mr. Stephen Sonnenberg. ECF No. 26-1 at 2; *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (the involvement of a mediator "helps to ensure that the proceedings were free of collusion and undue pressure"). The settlement may, accordingly, be presumed to have been procedurally fair. *See Mendez v. MCSS Rest. Corp.*, No. 16 Civ. 2746, 2022 WL 3704591, at *5 (E.D.N.Y. Aug. 26, 2022) ("If the settlement was achieved through experienced counsels' arm's-length negotiations, 'absent fraud

or collusion, courts should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement.'") (quoting *Lora v. To-Rise LLC*, No. 16 Civ. 3604, 2020 WL 8921400, at *7 (E.D.N.Y. June 3, 2020)).

### 2.    The Settlement is Substantively Fair.

In "assessing the substantive fairness of. . . [settlement] [a]greement[s,]. . . Court[s] consider[] the Rule 23[(e)(2)](C) and *Grinnell* factors." *Monaco v. Historic Old Bermuda Inn, Inc.*, No. 18 Civ. 4101, 2020 WL 13571784, at *3 (E.D.N.Y. Apr. 3, 2020). The Rule 23(e)(2)(C) factors used to assess a settlement's "adequacy" include:

> (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).

The *Grinnell* factors include:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Wal-Mart Stores, Inc.,* 396 F.3d at 117 (citing *Grinnell*, 495 F.2d at 463).

For the reasons set forth below, the Rule 23(e)(2)(C) and *Grinnell* factors support final approval of the settlement in this case.

### a.    The Recovery is Reasonable in Light of the Risks of Going Forward with Litigation (*Grinnell* Factors 1, 4, 5, 8, 9 and Rule 23(e)(2)(C)(i)).

The value of the Settlement compared to the anticipated recovery after trial, discounted for litigation risks, weighs heavily in favor of approval of the Settlement. Wage-and-hour class actions

are "inherently complex" and often burdened by "costs, delays and multitude of other problems associated with them." *Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 4357376, at *8 (S.D.N.Y. Sept. 16, 2011) (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000)). While Plaintiffs believe their case is strong, it is subject to the inherent risk of litigation. Because the New York City Fair Workweek Law is a relatively new one—enacted in 2017—there is, additionally, a paucity of case law interpreting this statute, which creates a unique risk to litigation. Were this case to be litigated, Plaintiffs would face risks in establishing liability and damages at trial.

Regarding liability, for instance, the Parties dispute whether Defendant was subject to the requirements of the Fair Workweek Law for the entire Class Period. The Fair Workweek Law provides that it only applies to an establishment that is "one of 30 or more establishments nationally." N.Y.C. Administrative Code § 20-1201. Defendant asserted that for some period of time during the COVID-19 pandemic there were less than 30 Gregorys Coffee locations nationwide due to store closures. Resolving this disputed issue would have involved both factual investigation through discovery and legal argument over how to apply the municipal code.

Regarding damages, the Parties dispute how to accurately calculate damages under the Fair Workweek Law. The law allows for "compensatory damages" to "make the employee or former employee whole." *See* N.Y.C. Admin. Code §§ 20-1208; 20-1211. Plaintiffs maintain they are owed compensatory damages for Defendant's alleged failure to provide good faith estimates to employees and for failure to inform employees of newly available shifts. They maintain these damages are equal to the difference between the hours each employee worked and a full 40-hour week multiplied by the employee's regular rate of pay. Defendant contested this method of computing compensatory damages, alleging it lacked sufficient support in the statute and case law.

10

These risks are eliminated through settlement. *See In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 382–83 (S.D.N.Y. 2013) ("[I]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome."). Even taking these risks into account, the Gross Settlement Amount represents 100% of the statutory penalties that Plaintiffs estimate the Class would recover for their allegations that Defendant failed to (1) provide all employees with a good faith estimate of the hours, dates, times, and locations of employees' expected regular work schedule; (2) provide predictable schedules with at least 14-days' notice (Plaintiffs allege that Defendant changed employees' schedules at the last minute and required employees to work closing and opening shifts without at least 11 hours off in between); and (3) provide the legally required information regarding new shifts to current employees before hiring new employees. Tresnowski Decl. ¶ 17. It also provides for approximately 10% of the compensatory damages, if they are evaluated pursuant to the metrics Plaintiffs believe are appropriate. *Id.* ¶ 18. Weighing the benefits of the settlement against the available evidence and the risks associated with proceeding in the litigation, the settlement amount is reasonable.

## b.     The Reaction of the Class Has Been Positive (*Grinnell* Factor 2).

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Chavarriaf v. N.Y. Airport Serv., LLC*, 875 F. Supp. 2d 164, 173 (E.D.N.Y. 2012) (citation omitted). It is also settled that "for due process to be satisfied, not every class member need receive actual notice [of the class settlement], as long as class counsel 'acted reasonably in selecting means likely to inform persons affected.'" *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 248-49 (E.D.N.Y. 2010) (quoting *In re Adelphia Commc'ns Corp. Sec. Litig.*, 271 Fed. App'x 41, 44 (2d Cir. 2008)) (alterations in original) (finding notice reasonable and comporting with due process when 29.92% of a 922,316

person class never received actual notice). Indeed, "'notice by mail sent to the last known address of the absent class member meets the due process requirement of notice through 'reasonable effort' even where numerous class members have since changed addresses and do not receive notice.'" *Stinson v. City of New York*, 256 F. Supp. 3d 283, 290 (S.D.N.Y. 2017) (quoting *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 164 F.R.D. 362 (S.D.N.Y. 1996)) (collecting cases); *see also, e.g., Hernandez*, 306 F.R.D. at 97 (approving as fair and reasonable notice mailed to only 109 out of 150 putative FLSA/NYLL class members, for which only 14.6% returned claim forms to become participating claimants, and granting final approval).

The Second Circuit has also emphasized that "[i]f only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement." *Wal-Mart Stores, Inc.*, 396 F.3d at 118 (citation omitted). Here, 99.08% of Settlement Class Members received the Settlement Notice and no class members have submitted objections or requested to be excluded from the Settlement. Ex. C to Tresnowski Decl. (Analytics Aff.) ¶¶ 9, 10, 11. The Settlement should accordingly be approved. *See Flores v. CGI Inc.*, No. 22 Civ. 350, 2022 WL 13804077, at *7 (S.D.N.Y. Oct. 21, 2022) ("The response to the settlement has been positive—no class members have objected to the settlement and only two exercised their right to opt-out. This is a major indication of fairness."); *see also Moukengeshcaie v. Eltman, Eltman & Cooper, P.C.*, No. 14 Civ. 7539, 2020 WL 5995978, at *5 (E.D.N.Y. Apr. 21, 2020)*, report and recommendation adopted sub nom. Moukengeschaie v. Eltman, Eltman & Cooper, P.C.,* No. 14 Civ. 7539, 2020 WL 5995650 (E.D.N.Y. Oct. 8, 2020) ("No  class members have objected to or opted out of the Settlement, which weighs in favor of approval") (collecting cases).

### c.   Discovery Advanced Far Enough for the Parties to Responsibly Resolve the Case (*Grinnell* Factor 3).

The third *Grinnell* Factor relates to whether counsel adequately evaluated the merits before

settling. *Cruz v. Sal-Mark Rest. Corp.*, No. 17 Civ. 815, 2019 WL 355334, at *5 (N.D.N.Y. Jan. 28, 2019). Approval is warranted if the parties were able to weigh the strengths and weaknesses of their claims, including by way of informal discovery, interviews, and other discussions. *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 620 (S.D.N.Y. 2012) (collecting cases). Here, the Parties engaged in a thorough investigation of the claims at issue prior to the mediation. Defendant provided compensation and time data for three stores where the Plaintiffs primarily worked and from the time period of January 1, 2019 through March 16, 2021, and Class Counsel used that data to build a comprehensive damages model. Tresnowski Decl. ¶ 12. The third *Grinnell* factor thus weighs in favor of Settlement approval.

### d. Maintaining the Class Through Trial Presents Risk (*Grinnell* Factor 6).

Obtaining class certification and maintaining it through trial also has risks. *See Parker v. City of New York*, No. 15 Civ. 6733, 2018 WL 6338775, at *6 (E.D.N.Y. Dec. 4, 2018) (Recognizing that "there is a risk associated with obtaining and maintaining class certification through trial. . . [and that a] motion for class certification would require additional discovery and briefing and inherently involves risk, expense, and delay."). Thus, there is a legitimate risk that individualized factual inquiries could preclude class treatment, at least in respect to some claims. Accordingly, this factor favors final approval.

### e. Defendant's Ability to Withstand a Greater Judgment Is Not Determinative (*Grinnell* Factor 7).

A defendant's ability to afford a greater judgment, by itself, does not render a settlement unfair. *Hernandez v. Immortal Rise, Inc*., 306 F.R.D. 91, 101 (E.D.N.Y. 2015). Here, the settlement eliminates the risk of collection by requiring Defendant fund the Gross Settlement Account with $100,000 within seven days after the Court enters the Final Approval, $50,000 within 60 days of

Court approval, and $50,000 within 60 days of the second payment. ECF No. 26-2 § 4(f). Accordingly, this factor is neutral.

### D.      The Allocation and Distribution Features of the Settlement Satisfy Rule 23.

#### 1.      The Distribution Plan Was Reasonably Calculated to Reach the Class Members (Rule 23(e)(2)(C)(ii)).

The settlement distribution plan need not be perfect, it need only be reasonable and rational. *Mikhlin v. Oasmia Pharm. AB,* No. 19 Civ. 4349, 2021 WL 1259559, at *6 (E.D.N.Y. Jan. 6, 2021). A reasonable plan will deter unjustified claims while not subjecting class members to an overly burdensome process to claim their settlement payments. *Id*. When assessing a proposed settlement under Rule 23(e)(2)(C)(ii), a court examines whether the proposed settlement includes a claims process that is unduly demanding. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig*., 330 F.R.D. 11, 40 (E.D.N.Y. 2019) (citing Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment). The Settlement Agreement easily meets this standard as there is no requirement for any Settlement Class Member to submit a claim form to participate in the settlement. Rather, individuals who do not exclude themselves from the settlement will receive a settlement payment without the need to file any paperwork. The procedure for distributing payments includes no unduly demanding requirements.

#### 2.      The Requested Attorneys' Fees are Reasonable (Rule 23(e)(2)(C)(iii)).

Pursuant to the Settlement Agreement, Class Counsel requests an award of one-third of the total value of the settlement fund created for the class. ECF No. 26-2, § 3(b)(i). The payment of fees is keyed to the distribution of the fund. *Id.* § 4(g)(i)(4); *c.f. Cymbalista v. JPMorgan Chase Bank*, *N.A*., No. 20 Civ. 456, 2021 WL 7906584, at *8 (E.D.N.Y. May 25, 2021) (discussing that some courts disfavor "quick-pay provisions" that permit counsel to be paid before the class). This request is consistent with the practice in this district of awarding one-third of the fund in employee

class actions.[4] Furthermore, Class Counsel also submit their lodestar, showing the amount of fees requested comes to below the lodestar total, further supporting approval. *See Calle v. Elite Specialty Coatings Plus, Inc*., No. 13 Civ. 6126, 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 21, 2014) (approving one-third of the fund as fees in wage and hour matter where lodestar exceeded the requested fees). For these reasons and the reasons set forth in Section V below, the requirement of Rule 23(e)(2)(C)(iii) is met.

### 3.    The Parties' Have No Other Agreement Directly Related to this Settlement (Rule 23(e)(2)(C)(iv)).

The Parties have no side agreements regarding the claims settled in the Settlement Agreement. The only other agreement between the Parties is the Named Plaintiffs' individual settlement of their claims under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). The individual FLSA/NYLL agreement was identified and approved by the Court separately. *Supra* n.2. That individual settlement and the limited release in the Class Action Settlement preserves the right of all other Settlement Class Members to pursue any claims they may have outside the Fair Workweek Law claims waived during the Class Period.

### 4.    The Proposed Settlement Treats Class Members Equitably Relative to Each Other (Rule 23(e)(2)(D)).

Class members are treated equitably when they each receive a *pro rata* share of the recovery. *Christine Asia Co. v. Yun Ma*, No. 15-MD-2631, 2019 WL 5257534, *15 (S.D.N.Y. Oct. 16, 2019) (finding that the requirement that class members be treated equitably relative to each other is satisfied where each class member was to receive a "pro rata share" of the settlement fund);

---

[4]     *See, e.g., Mendez v. MCSS Rest. Corp*., No. 16 Civ. 2746, 2022 WL 3704591, at *9 (E.D.N.Y. Aug. 26, 2022) ("Class Counsel's fee request of one-third of the Settlement Fund is reasonable and consistent with the norms of class litigation in this circuit, including wage and hour cases, and should be awarded on the basis of the total funds made available."); *Cano v. Nineteen Twenty Four, Inc*., No. 15 Civ. 4082 (RER), 2017 WL 11507654, at *6 (E.D.N.Y. Apr. 24, 2017) (awarding one-third in wage and hour settlement).

*see also Baudin v. Res. Mktg. Corp., LLC*, No. 19 Civ. 386, 2020 WL 4732083, at *9 (N.D.N.Y. Aug. 13, 2020), *on reconsideration in part*, No. 19 Civ. 386, 2020 WL 6131758 (N.D.N.Y. Oct. 19, 2020) (finding a *pro rata* distribution "based on the number of weeks worked" treated class members equitably). An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel. *See In re Vitamin C Antitrust Litig.*, No. 06 Md. 1738, 2012 WL 5289514, *7 (E.D.N.Y. Oct. 23, 2012).

Here, the Settlement Payments are determined on a *pro rata* basis based on the number of weeks in the Class Period each Settlement Class Member worked. This distribution has a reasonable and rational basis to the damages each Class Member could pursue individually for the alleged scheduling practices by Defendant that failed to comply with the Fair Workweek Law.

## V.   NAMED PLAINTIFFS' REQUESTED SERVICE AWARD PAYMENTS ARE REASONABLE.

The Settlement provides for service awards of $3,000, each, to the two Named Plaintiffs. In examining service awards, courts consider the: (1) risks incurred; (2) effort expended in the case and value added to it; and (3) ultimate recovery. *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y 2005).

Named Plaintiffs in class actions face real risks. The use of their names in enforcing their rights as employees creates the risk of discrimination from future employers and jeopardizes their "ability to depend on the employer [against whom the claim was filed] for references in connection with future employment." *Parker v. Jekyll & Hyde Ent. Holdings, L.L.C.*, No. 08 Civ. 7670, 2010 WL 532960, at *1 (S.D.N.Y. Feb. 9, 2010).

As to the second factor, courts recognize the important factual knowledge that class representatives bring to employment class actions, including information about employer policies and practices that affect wages. *See Frank*, 228 F.R.D., at 187-88 (recognizing the important role

that class representatives play as the "primary source of information concerning the claims," including by responding to counsel's questions and reviewing documents). The Named Plaintiffs here assisted counsel in the investigation of the Settlement Class Members' claims, participated in mediation and settlement discussions, responded to points raised by Defendant, and provided vital assistance that helped Class Counsel achieve this settlement for the benefit of the Settlement Class Members. ECF No. 26-4; Tresnowski Decl. ¶ 16.

The proposed Service Awards equal 3% of the Gross Settlement fund, which is within the range approved in this Circuit in wage-and-hour class actions. *See, e.g., Pulliam v. Trans Express, Inc.*, No. 19 Civ 4038, 2021 WL 4780136, at *3 (E.D.N.Y. Sept. 1, 2021) ($35,000 in service payments totaled about 5.75% of $607,500 settlement); *Hyun v. Ippudo USA Holdings*, No. 14 Civ. 8706, 2016 WL 1222347, at *2 (S.D.N.Y. Mar. 24, 2016) (awards totaled 5% of the FLSA settlement); *Frank*, 228 F.R.D. at 187 (awards totaled 8.4% of the settlement); *Parker*, 2010 WL 532960, at *2 (approving awards totaling 11% of the fund, "given the value of the representatives' participation and the likelihood that class members who submit claims will still receive significant financial awards").

Lastly, the Service Awards are consideration for the enhanced releases signed by Named Plaintiffs. *See* ECF No. 26-2, §§ 3(c); 5(b).

## VI.   ATTORNEYS' FEES AND COSTS ARE REASONABLE, APPROPRIATE, AND SHOULD BE APPROVED.

In class actions, "when determining appropriate counsel fees, courts have used either the lodestar method or awarded fees based on a percentage of the settlement fund." *Cohan v. Columbia Sussex Mgmt., LLC*, No. 12 Civ 3203, 2018 WL 4861391, at *1 (E.D.N.Y. Sept. 28, 2018) (citing to *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000)). The "trend" in this Circuit is to award fees using the percentage of the fund method in common-fund wage settlements such

as the present one. *See Hernandez*, 306 F.R.D. 91 at 102 (citations omitted); *Berrios v. Nicholas Zito Racing Stable, Inc*., No. 04 Civ. 22, 2014 WL 12838562, at *7 (E.D.N.Y. Jan. 28, 2014); *see, e.g.*, *Meo v. Lane Bryant, Inc.*, No. 18 Civ. 6360, 2020 WL 4047897, at *2 (E.D.N.Y. July 17, 2020) ("[T]he apportionment of approximately one-third of the settlement amount to the attorney's fees (*i.e.*, $465,000), as provided in the Settlement Agreement, is a fair and reasonable reflection of the services rendered to the Plaintiffs by [KM and co-counsel]."). Accordingly, Class Counsel's request for a contingency fee of one-third of the settlement is consistent with the norms in this district. *Meo*, 2020 WL 4047897, at *2 ("Such apportionment is well within the parameters set by courts in this District." (collecting cases)); *Cohan*, 2018 WL 4861391, at *2 ("In common fund cases, the Second Circuit favors awarding fees according to the 'percentage of the fund' method." (collecting cases)).

### A.    Class Counsel's Fee Request is Reasonable Under a Lodestar Cross Check.

While it is the practice in the Second Circuit to apply the percentage method, rather than the lodestar, when calculating fees, the lodestar method still serves an important function—as a crosscheck and alternative to scrutinizing every hour worked. *See, e.g., Meo*, 2020 WL 4047897, at *2 (noting that the court need not scrutinize every hour of work when performing the crosscheck); *Cohan*, 2018 WL 4861391, at *2 (the court need not "exhaustively scrutinize[]" counsel's hours when performing a cross check (internal quotations and citations omitted)). The lodestar is first determined by multiplying the hours reasonably expended on the case by a reasonable hourly rate. *Cohan*, 2018 WL 4861391, at *5. Then, the proposed fee is compared to the lodestar. *Id*. Courts will approve fees that are "two to six times the lodestar." *Id.* (citations and quotations omitted; collecting cases); *Weston v. TechSol, LLC*, No. 17 Civ. 0141, 2018 WL 4693527, at *9 (E.D.N.Y. Sept. 26, 2018) (same); *accord. Tanski v. AvalonBay Communities, Inc.*,

No. 15 Civ. 6260, 2020 WL 2733989, at *3 (E.D.N.Y. May 26, 2020) (collecting cases with multipliers ranging from 2.02 to 3.5 and noting that multipliers exceeding 4 are routine).

In this case, the lodestar for Class Counsel is $180,691.27—approximately 2.7 times the proposed fee of $66,666.67—which is based upon 376.87 attorney and paralegal hours devoted to the case. Tresnowski Decl. ¶ 19. As the requested attorneys' fees are substantially less than the lodestar, the fees should be approved by the Court. *See Morris*, 859 F. Supp. 2d, at 623 (noting multipliers between two and six as appropriate); *Fleisher v. Phoenix Life Ins. Co.*, No. 11 Civ. 8405, 2015 WL 10847814, at *18 (S.D.N.Y. Sept. 9, 2015) (awarding multiplier of 4.87); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 184-186 (W.D.N.Y. 2011) (awarding multiplier of 5.3); *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 371 (S.D.N.Y. 2002) (finding "the modest multiplier of 4.65 [ ] fair and reasonable.").

## B. Class Counsel's Request is, Additionally, Reasonable Under the *Goldberger* Factors.

In reviewing the appropriateness of an attorneys' fee award in a common fund case such as this, the Second Circuit instructs district courts to assess whether the requested attorney's fee, whether determined under the percentage method or lodestar method, is reasonable by considering six factors: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000). The agreed-upon fee is reasonable under each of these factors.

### 1. Class Counsel Expended Substantial Time and Labor.

Class Counsel expended significant effort to obtain the $200,000 gross settlement fund, yet did so in a time efficient and professional manner. Class Counsel filed this suit on behalf of Named Plaintiffs approximately a year and a half ago, on August 3, 2021. ECF No. 1. Prior to the filing

of the lawsuit, Class Counsel vigorously investigated the merits of the claims, interviewed and conferred with the two plaintiffs who joined the case at its inception and other former employee witnesses, and devoted hours to researching and writing the complaint. Tresnowski Decl. ¶ 20. After filing the complaint, Class Counsel prepared for and participated in the Court-ordered mediations; building damage models; engaging in discovery; and negotiating then drafting the final proposed settlement agreement. *Id*.

In litigating and successfully reaching a resolution of this matter, Class Counsel worked a total of 376.87 hours, including time worked by attorneys and paralegals. Tresnowski Decl. ¶ 19. Thus Class Counsel has incurred $180,691.27, which is dramatically more than the requested one-third of the fund in fees equal to $66,666.67. It is also salient to note that the amount does not account for the additional time and labor Class Counsel will devote to communicating with Class Members after the Settlement Checks are distributed and overseeing the administration of this settlement if the Court grants final approval of the settlement. *See Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 482 (S.D.N.Y. 2013) ("In wage and hour cases, Class Counsel is often called upon to perform work after the final approval hearing, including answering class member questions, answering questions from the claims administrator, and negotiating and sometimes litigating disagreements with defendants about administering the settlement and distributing the fund").

### 2.     The Magnitude and Complexities of the Litigation.

As discussed above, because the New York City Fair Workweek Law is a relatively new law with little case law interpreting the statute, this case presents complex and novel issues of law, fact, and class-action procedure. As a result, the complexity and numerous legal and factual issues involved in the resolution of Plaintiffs' claims favor Class Counsel's fees request. *Frank*,

228 F.R.D. at 189 (mixed questions of fact and law supported court's award of attorneys' fees representing 38% of the common fund).

### 3.    The Risk of the Litigation.

Class Counsel took this matter on a contingency fee basis and thus assumed the risk of recovering nothing if Plaintiffs' claims were unsuccessful. If this case had been dismissed on summary judgment, trial, or on appeal, Class Counsel would have lost all time and expenses put into this matter. Tresnowski Decl. ¶ 21. Furthermore, the unsettled issues of fact and law at issue, along with the factual and procedural obstacles to recovery, posed a significant risk to obtaining any recovery for the Class Members whatsoever. *Id.* Therefore, this factor supports approving the request for attorneys' fees.

### 4.    The Quality of Representation.

Class Counsel have extensive experience representing workers in wage and hour class actions and an excellent reputation among the employment law bar. *Osman v. Grube, Inc.,* No. 16 Civ. 00802, 2018 WL 2095172, at *4 (N.D. Ohio May 4, 2018) (Werman Salas are "recognized lawyers in wage and hour litigation and have an excellent national reputation in representing [] employees in this type of case . . . Courts recognize [Werman Salas] as leaders in advocating the rights of such workers throughout the United States."); *Mouloki v. Epee,* No. 14 Civ. 5532, 2017 WL 2791215, at *3 n.4 (N.D. Ill. June 27, 2017) (Werman Salas are "highly respected and experienced attorneys . . . in wage and hour cases."); *Sanchez v. Roka Akor Chicago LLC,* No. 14 Civ. 4645, 2017 WL 1425837, at *5-7 (N.D. Ill. Apr. 20, 2017) (Werman Salas are "national leaders in advocating the rights of working people in wage and hour litigation."). A resume for Werman Salas P.C. is attached as Exhibit B to the Tresnowski Declaration.

### 5.     The Requested Fee in Relation to the Settlement.

Courts consider the size of the settlement when assessing attorneys' fees to ensure the attorneys are not recovering a windfall. *See Hall v. ProSource Techs., LLC,* No. 14 Civ. 2502, 2016 WL 1555128, at \*16 (E.D.N.Y. Apr. 11, 2016) ("The fifth Goldberger factor 'ensure[s] that the [fee] awarded does not constitute a wind-fall.'") (quoting *Sukhnandan v. Royal Health Care of Long Island LLC,* No. 12 Civ. 4216, 2014 WL 3778173, at \*13 (S.D.N.Y. July 31, 2014)). These concerns are not implicated here, given the modest size of the recovery. The Second Circuit cited settlements over \$50 million as fit for a reduction in fees to avoid a windfall. *Goldberger*, 209 F.3d at 52.

The settlement fund here–\$200,000–falls in line with other wage and hour settlements where a one-third recovery to class counsel was reasonable, and because Class Counsel will receive less than their lodestar, there is no windfall. *See Flores v. Anjost Corp.*, No. 11 Civ. 1531, 2014 WL 321831, at \*9 (S.D.N.Y. Jan. 29, 2014) (finding that "[a]n award of one third of the [common] fund is consistent with what reasonable, paying clients pay in contingency employment cases).

### 6.     Public Policy Considerations.

"Fee awards in wage and hour cases are meant to encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel." *Beckman*, 293 F.R.D. at 477 (internal quotations omitted). In the present matter, Class Counsel agreed to assume the risk of time and effort, and advanced costs "with no ultimate guarantee of compensation," by pursuing this case on a full contingency basis. Tresnowski Decl. ¶ 21. The overwhelmingly favorable reaction by the Class Members—illustrated by the fact that not a single noticed Class Member objected or opted out—confirms their satisfaction with

Class Counsel's diligent work, efficiency, and the result, as the amount of requested attorneys' fees was provided in the Settlement Notice, informing the Class Members of the requested fees and their ability to exclude themselves or to object to the settlement if they disagreed. *See Azogue v. 16 for 8 Hospitality LLC*, No. 13 Civ. 7899, 2016 WL 441422, at *7 (S.D.N.Y. Aug. 19, 2016) (approving counsel's request for 33.33% of the fund, noting fee requested was included in notice to class members, and observing that favorable class reaction "provides support for Class Counsel's fee request").

Public policy considerations of encouraging highly skilled and competent attorneys to represent those with small wage claims, accordingly, weigh heavily in favor of granting Class Counsel's request. *See Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 309 (E.D.N.Y. 2015) (holding that the "primary public policy consideration" in awarding attorneys' fees in common fund cases is "incentivizing capable counsel to similar cases"); *see also Hall*, 2016 WL 1555128, at *16 (collecting cases).

C.     **Class Counsel's Request for One-Third of the Settlement in Fees is Appropriate in an Employee Class Action.**

Class Counsel's request for a contingency fee of one-third of the Gross Settlement Amount is consistent with the norms in the Eastern District of New York. *Meo*, 2020 WL 4047897, at *2 ("Such [a one-third] apportionment is well within the parameters set by courts in this District." (collecting cases)); *Castillo v. Cranes Express Inc.*, No. 18 Civ. 1271, 2018 WL 7681356, at *3 (E.D.N.Y. Dec. 12, 2018) ("Courts in this Circuit generally approve attorney's fees that are limited to a one-third contingency, and typically modify fees 'representing more than one-third of the total settlement amount.'"); *Cohan*, 2018 WL 4861391, at *2 ("In common fund cases, the Second Circuit favors awarding fees according to the 'percentage of the fund' method." (collecting cases)). An attorneys' fees award of one-third of the gross settlement fund plus litigation expenses is,

additionally, appropriate in wage-and-hour cases generally. *Milton v. Bells Nurses Registry & Employment Agency, Inc.*, No. 502303/2015, 2015 WL 9271692, at *4 (N.Y. Sup. Dec. 21, 2015) (citing *Masters v. Wilhelmina Model Agency, Inc.,* 473 F.3d 423 at 437 (2d Cir. 2007)) (awarding one-third of the settlement fund as "within the percentage regularly approved in class action and wage and hour suits") (collecting cases).

## VII.    CLASS COUNSEL'S REQUESTED EXPENSES ARE REASONABLE.

Class Counsel has expended $10,545.69 in costs through the present date pursuing this litigation including filing fees, postage, mediation fees, and research costs. Tresnowski Decl. ¶ 22. Because these expenses were reasonably incurred, they should be awarded from the settlement fund. *Beckman*, 293 F.R.D. at 482 (S.D.N.Y. 2013) ("Courts typically allow counsel to recover their reasonable out-of-pocket expenses").

## VIII.   CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant this Motion for Final Approval of Settlement and enter the Proposed Order.

Respectfully submitted,

Dated:  February 2, 2023

s/Michael M. Tresnowski
One of Plaintiffs' Attorneys

Sally J. Abrahamson
sabrahamson@flsalaw.com
**Werman Salas P.C.**
335 18th Pl NE
Washington, D.C. 20002
Phone No.: (202) 830-2016
Fax No.: (312) 419-1025

Michael M. Tresnowski*
mtresnowski@flsalaw.com
**Werman Salas P.C.**
77 W. Washington Street, Suite 1402
Chicago, Illinois 60602

24

Phone No.: (312) 419-1008
Fax No.: (312) 419-1025

*Attorneys for Plaintiffs and the Class*

\* Admitted *pro hac vice*